1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LONG HOAH THANH,<br><br>    Defendant. | Case No. 98-CR-20060-LHK-6<br>Case No. 16-CV-03542-LHK<br><br>**ORDER GRANTING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Re: Dkt. No. 1162 (98-CR-20060-LHK-6)[1]<br>Re: Dkt. No. 1 (16-CV-03542-LHK) |

Before the Court is a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 filed by Defendant Long Hoah Thanh ("Defendant"). Having considered the parties' briefing, the record in this case, and the relevant law, the Court GRANTS Defendant's § 2255 motion.

**I.    BACKGROUND**

The instant criminal case was initially assigned to U.S. District Judge James Ware. On May 1, 2001, after a six-week jury trial, Defendant was convicted of (1) conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371 by conspiring to transport stolen

---

[1] All docket entries in this Order are to Case No. 98-CR-20060 unless otherwise noted.

1

goods in violation of 18 U.S.C. § 2314 (Count One of the Superseding Indictment); (2) conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count Two of the Superseding Indictment); and (3) using a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Three of the Superseding Indictment). ECF No. 621; *see* ECF No. 537 (Superseding Indictment). Defendant's § 924(c) conviction under Count Three was premised on the theory that (1) Defendant's conspiracy to commit Hobbs Act robbery offense (under Count Two) constitutes a "crime of violence" within the meaning of § 924(c); and therefore (2) Defendant's use of a firearm in relation to that crime of violence violated § 924(c). *See* ECF No. 537 at 7. On June 24, 2002, Judge Ware sentenced Defendant to 60 months of imprisonment on Count One and 188 months of imprisonment on Count Two, to run concurrently, and 60 months of imprisonment on Count Three to run "consecutively to the total term imposed on [C]ounts 1 and 2," for a total prison sentence of 248 months. ECF No. 763. Judge Ware also sentenced Defendant to three years of supervised release following his term of imprisonment. *Id.*

Defendant appealed his conviction and sentence on a number of grounds. ECF No. 770; *see United States v. Thanh*, 100 F. App'x 697 (9th Cir. 2005). On July 15, 2005, the Ninth Circuit issued an unpublished memorandum disposition affirming Defendant's conviction but remanding his sentence in accordance with *United States v. Ameline*, 409 F.ed 1073 (9th Cir. 2005) (en banc). *See Thanh*, 100 F. App'x at 702.

Judge Ware resentenced Defendant on November 14, 2005. *See* ECF No. 1047. At resentencing, Defendant was sentenced to 60 months of imprisonment on Count One and 151 months of imprisonment on Count Two, to run concurrently, and 60 months of imprisonment on Count Three to run consecutive to the total term imposed on Counts One and Two, for a total prison sentence of 211 months. *See id.*; ECF Nos. 1052–53. Judge Ware once again sentenced Defendant to three years of supervised release following his term of imprisonment. *Id.*

On June 24, 2016, Defendant filed the instant motion to vacate pursuant to § 2255. ECF No. 1162 ("Mot."). In his motion, Defendant argues that in light of the U.S. Supreme Court's

2

decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), Defendant's conviction under Count Three for violation of 18 U.S.C. § 924(c) was invalid, and thus Defendant's sentence must be vacated and Defendant must be resentenced. *See id.* at 1. Because Judge Ware had retired in 2012, the instant case was reassigned to the undersigned judge. ECF No. 1160. The government opposed Defendant's § 2255 motion on September 12, 2016, ECF No. 1178 ("Opp."), and Defendant filed a reply on October 25, 2016. ECF No. 1189 ("Reply").

On April 17, 2018, the Court ordered the parties to file supplemental briefing regarding the impact, if any, of the U.S. Supreme Court's April 17, 2018 decision in *Sessions v. Dimaya*, 584 U.S. 1204 (2018), on the validity of Defendant's conviction under Count Three for violation of 18 U.S.C. § 924(c). ECF No. 1205. On May 8, 2018, Defendant filed a supplemental brief. ECF No. 1207 ("Suppl."). The government filed a supplemental opposition brief on May 29, 2018, ECF No. 1211 ("Suppl. Opp."), and Defendant filed a supplemental reply brief on June 12, 2018. ECF No. 1216 ("Suppl. Reply").

## II.     DISCUSSION

Defendant moves to vacate his sentence on the ground that, based on the U.S. Supreme Court's decision in *Johnson*, Defendant's conviction under Count Three for violation of 18 U.S.C. § 924(c) was invalid. Mot. at 1. Section 924(c) operates to increase the sentence for a defendant who uses, carries, or possesses a firearm in the commission of certain underlying crimes— specifically, "crimes of violence" or drug trafficking crimes. 18 U.S.C. § 924(c)(1)(A). As discussed above, Defendant's § 924(c) conviction under Count Three was premised on the theory that Defendant's conspiracy to commit Hobbs Act robbery conviction (under Count Two) qualifies as a "crime of violence" within the meaning of § 924(c), and thus Defendant's use of a firearm in relation to that crime of violence violated § 924(c). *See* ECF No. 537 at 7. As a result, the key question here is whether Defendant's conviction under Count Two for conspiracy to commit Hobbs Act robbery qualifies as a "crime of violence." Section 924(c)(3) provides the definition:

United States District Court
Northern District of California

[T]he term "crime of violence" means an offense that is a felony and—

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is commonly referred to as the "elements clause," and subsection (B) is known as the "residual clause." The Court employs that terminology here.

Defendant argues that his conspiracy to commit Hobbs Act robbery conviction under Count Two is not a "crime of violence," for the following two reasons. First, Defendant contends that his conspiracy to commit Hobbs Act robbery conviction does not satisfy the elements clause. Mot. at 8–9; Suppl. at 4–5. Next, Defendant contends that even if his conspiracy to commit Hobbs Act robbery conviction satisfies the residual clause, *Johnson* (and now *Dimaya*) make clear that the residual clause is unconstitutionally vague. Mot. at 4–8; Suppl. at 3–4. The government disagrees with both of Defendant's arguments, and also asserts that Defendant "is procedurally barred" from raising a *Johnson*-based void-for-vagueness challenge to § 924(c)'s residual clause in his § 2255 motion "because he failed to raise it on direct appeal." Opp. at 3–6.

Because certain aspects of the government's procedural bar argument turn on or are informed by the merits issues raised in Defendant's § 2255 motion, the Court will address the merits first. *See Bolar v. United States*, 2017 WL 1543166, at *1 (W.D. Wash. Apr. 28, 2017) (addressing the merits of a *Johnson*-based § 2255 motion before addressing the government's procedural default argument "[b]ecause certain procedural aspects of [the § 2255] motion turn on resolution of the motion's merits"). Specifically, the Court will first address whether Defendant's conspiracy to commit Hobbs Act robbery conviction under Count Two satisfies § 924(c)'s elements clause. Then, the Court discusses whether, in light of *Johnson* and *Dimaya*, § 924(c)'s residual clause is unconstitutionally vague. Finally, the Court addresses the government's procedural bar argument.

4

### A. Elements Clause

Defendant argues that his conviction under Count Two for conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) does not satisfy the elements clause of § 924(c). In deciding whether this offense is a "crime of violence" under the elements clause, the Court employs an analytical method called the categorical approach. *See United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir. 2006) ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *see also Taylor v. United States*, 495 U.S. 575, 600–02 (1990). Under the categorical approach, the particular facts of the defendant's case do not matter; instead, the Court examines the elements of the offense. *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014). Specifically, the Court compares the elements of the offense with the generic federal definition—here, the definition of "crime of violence" set forth in the elements clause. *See United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015). The offense is a categorical match if its elements are "the same as, or narrower than, those of" the elements clause. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In contrast, if the offense covers a "broader swath of conduct than" the elements clause, there is no categorical match. *See id.*[2]

As noted above, the elements clause covers any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Neither party disputes that the Court should employ the definition of "physical force" that the U.S. Supreme Court assigned to the same phrase in the Armed Career Criminal Act. Thus, for present purposes, "physical force" means "violent force—i.e., force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 134 (2010) ("*Curtis Johnson*"). Additionally, the use of force must be intentional, rather than reckless or negligent. *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015).

---

[2] For statutes with multiple alternative elements, the U.S. Supreme Court has approved the use of what has been termed the modified categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). This Court need not resort to that approach here, as the parties do not dispute that 18 U.S.C. § 1951 is divisible into constituent elements.

As a result, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) qualifies as a "crime of violence" under § 924(c)'s elements clause only if it "has as an element the use, attempted use, or threatened use" of "violent force—i.e., force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 134. This Court has previously concluded that conspiracy to commit Hobbs Act robbery does *not* qualify as a crime of violence under the elements clause. Specifically, in *United States v. Chavez*, 2018 WL 339140 (N.D. Cal. Jan. 9, 2018) ("*Chavez I*"), this Court first noted that "[t]o establish a conspiracy to commit Hobbs Act robbery, 'the government must show that (1) two or more people agreed to commit a robbery or extortion of the type discussed in the Hobbs Act; (2) the defendant had knowledge of the conspiratorial goal; and (3) the defendant voluntarily participated in trying to accomplish the conspiratorial goal.'" *Id.* at *8 (quoting *United States v. Si*, 343 F.3d 1116, 1123–24 (9th Cir. 2003)). This Court then stated that conspiracy to commit Hobbs Act robbery "encompass[es] situations where a defendant agrees to commit a robbery in the future," and that "[a] defendant can enter such an agreement without using, attempting to use, or threatening to use physical force." *Id.* at *9. This Court gave the following example:

> [A] defendant could be convicted [of conspiracy to commit Hobbs Act robbery] based on an agreement to commit an armed bank robbery and the subsequent obtaining of a blueprint of the bank for the commission of the robbery. By entering that agreement and securing the blueprint, the defendant would be guilty of conspiracy to commit armed bank robbery and conspiracy to commit Hobbs Act robbery. However, the defendant did not use, attempt to use, or threaten to use force against any person or property.

*Id.* Based on this analysis, this Court found that "conspiracy to commit Hobbs Act robbery cover[s] more conduct than the elements clause," and therefore does not "qualif[y] as a 'crime of violence' under the elements clause." *Id.*

This Court further noted textual clues supporting this result. In particular, the elements clause embraces an offense that "has as an element the use, *attempted* use, or *threatened* use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphases

added).  Noticeably absent from the list is an entry for "conspiracy to use" physical force.  *Chavez I*, 2018 WL 339140 at *9.  This Court also explained that the government could not shoehorn conspiracy to use physical force into "attempted use . . . of physical force because" conspiracy and attempt are "distinct crimes" whose scopes are not wholly overlapping.  *Id.*  While both require an overt act, the overt act to establish conspiracy need not be as substantial as the overt act to establish attempt.  *See id.* at *9 n.4, *12–13.  This is significant because, as explained in the example presented above, the overt act requirement for establishing conspiracy to commit Hobbs Act robbery can be met by merely obtaining a blueprint of the location to be robbed, and such an overt act need not involve the use of any force.  *See id.* at *9 n.4.

Moreover, this Court noted that although "[t]he Ninth Circuit has not addressed whether . . . . conspiracy to commit Hobbs Act robbery falls under the elements clause . . . the 'overwhelming weight' of recent district court authority holds that conspiracy to commit Hobbs Act robbery is not a 'crime of violence'" under the elements clause.  *Id.* at *9 (quoting *United States v. Pullia*, 2017 WL 5171218, at *4 (N.D. Ill. Nov. 8, 2017), and citing *United States v. Luong*, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016), *Hargrove v. United States*, 2017 WL 4150718, at *3 (N.D. Ill. Sept. 19, 2017), *United States v. Bonaparte*, 2017 WL 3159984, at *5 (D. Nev. July 25, 2017), *United States v. Hernandez*, 228 F. Supp. 3d 128, 138 (D. Me. 2017), and *United States v. Baires-Reyes*, 191 F. Supp. 3d 1046, 1050–51 (N.D. Cal. 2016)).

For the reasons summarized above, the Court agrees with Defendant that Defendant's conviction under Count Two for conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under § 924(c)'s elements clause.  The government appears to argue that because attempted Hobbs Act robbery is a crime of violence under the elements clause, it necessarily follows that conspiracy to commit Hobbs Act robbery is also a crime of violence under the elements clause.  *See* Opp. at 19–22.  The government's argument is not well-taken.  As the Court explained above and in *Chavez I*, while both conspiracy and attempt require an overt act, conspiracy and attempt are "distinct crimes" in part because the overt act necessary to establish a

7

conspiracy need not be as substantial as the overt act necessary to establish attempt. 2018 WL 339140 at *9 n.4, 12–13. Consequently, as demonstrated by the blueprint example above, the overt act necessary to support a conviction for conspiracy to commit Hobbs Act robbery need not involve "the use, attempted use, or threatened use" of any force, let alone the "violent force" required by § 924(c)'s elements clause. *Curtis Johnson*, 559 U.S. at 134. As a result, the Court concludes that Defendant's conviction under Count Two for conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause of § 924(c).

### B. Residual Clause

As discussed above, the residual clause of § 924(c) covers any felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Defendant does not contest that conspiracy to commit Hobbs Act robbery is an offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* Instead, Defendant asserts in the instant § 2255 motion that § 924(c)'s residual clause is unconstitutionally vague for the same reasons that the U.S. Supreme Court in *Johnson* declared unconstitutional the similarly worded residual clause in the Armed Career Criminal Act ("ACCA"). Mot. at 4–8.

Further, after Defendant filed the instant § 2255 motion, the U.S. Supreme Court held in *Dimaya* that the residual clause of 18 U.S.C. § 16(b)—which has identical language to § 924(c)'s residual clause—is also unconstitutionally vague. 138 S. Ct. at 1210. The Court therefore ordered supplemental briefing regarding the impact of *Dimaya* on the question of whether § 924(c)'s residual clause is unconstitutionally vague. *See* ECF No. 1204. In his supplemental briefing, Defendant argues that *Dimaya* further confirms that the residual clause of § 924(c) is unconstitutionally vague. Suppl. at 3–4. On the other hand, the government asserts that (1) the Court should stay consideration of the instant § 2255 motion until the Ninth Circuit rules on this

particular issue in *United States v. Dominguez*, No. 14-10268,[3] Suppl. Opp. at 1–2; and (2) in any event, § 924(c)'s residual clause is not unconstitutionally vague. *Id.* at 3–9.

The Court finds it appropriate to proceed to address Defendant's constitutional challenge at this juncture. Indeed, this Court has already ruled in another case that, in light of *Johnson* and *Dimaya*, § 924(c)'s residual clause is unconstitutionally vague. Specifically, in *United States v. Chavez*, 2018 WL 3609083 (N.D. Cal. July 27, 2018) ("*Chavez II*"), this Court concluded that "the current state of Ninth Circuit and U.S. Supreme Court law dictates" that the residual clause is void for vagueness. *Id.* at *5. Further, the government acknowledges that its argument depends on its disagreement with binding Ninth Circuit authority that has not been overruled by the Ninth Circuit en banc or by the U.S. Supreme Court. *See* Suppl. Opp. at 4 (stating that the government "believes that the Ninth Circuit's current precedent was wrongly decided"). Beyond that, as this Court stated in *Chavez II*, "the time until the Ninth Circuit issues a ruling could be lengthy (especially if en banc proceedings are initiated)." 2018 WL 3609083 at *6. For these reasons, the Court will not stay resolution of Defendant's § 2255 motion pending any Ninth Circuit decisions.

Again, the operative question is whether § 924's residual clause—which is contained in § 924(c)(3)(B)—is unconstitutionally vague. The government offers substantially the same arguments in favor of the constitutional validity of § 924(c)(3)(B) as the government offered in *Chavez II*. As a result, and for the sake of thoroughness, the Court largely reproduces its analysis of this particular issue from *Chavez II*. The Court first discusses *Johnson* and *Dimaya*, wherein the U.S. Supreme Court held that provisions similar to § 924(c)'s residual clause were void for vagueness. Specifically, in *Johnson*, the U.S. Supreme Court held that another provision of § 924—the residual clause of the ACCA, § 924(e)(2)(B)(ii)—is unconstitutionally vague. Further, in *Dimaya*, the U.S. Supreme Court held that 18 U.S.C. § 16(b)—which has identical language to § 924(c)'s residual clause—is unconstitutionally vague. After providing an overview of *Johnson*

---

[3] The Court notes that it appears that another Ninth Circuit case presenting the same issue—*United States v. Begay*, No. 14-10080—is earlier in the queue.

9

Case No. 16-CV-03542-LHK
ORDER GRANTING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

United States District Court
Northern District of California

and *Dimaya*, this Court turns to an application of the principles in those cases to the provision at issue in the instant case, § 924(c)(3)(B).

### 1. *Johnson—§ 924(e)(2)(B)(ii)*

In *Johnson*, the U.S. Supreme Court addressed the issue of whether a portion of the ACCA—namely, the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii)—is unconstitutionally vague. 135 S. Ct. at 2555. The U.S. Supreme Court began by summarizing the principles underpinning the Constitution's prohibition of vague criminal laws. Under the Fifth Amendment, "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Precedent of the U.S. Supreme Court has held that "a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement" violates the Fifth Amendment's guarantee of due process. *Johnson*, 135 S. Ct. at 2556. This principle is applicable to "statutes defining elements of crimes" as well as "statutes fixing sentences." *Id.* at 2557. The relevant question in *Johnson* was whether the residual clause of § 924(e)(2)(B)(ii), which increases the sentences of felons in possession of firearms, is unconstitutionally vague. 135 S. Ct. at 2557.

The relevant portion of § 924(e)(2)(B)(ii) provides a definition of the term "violent felony." The text reads: "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The italicized phrase is the residual clause that was challenged in Johnson as unconstitutionally vague.

The U.S. Supreme Court held that "[t]wo features of the residual clause conspire to make it unconstitutionally vague." *Johnson*, 135 S. Ct. at 2557. First, the U.S. Supreme Court explained that binding Supreme Court authority "requires courts to use . . . the categorical approach when deciding whether an offense" falls within the residual clause. *Id.*[4] That approach poses issues, the

---

[4] The form of the categorical approach used for the residual clause differs slightly from the form

10

U.S. Supreme Court said, because "the judicial assessment of risk" is tied to "a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Moreover, there is no settled way to "go about deciding what kind of conduct the 'ordinary case' of a crime involves." *Id.* The U.S. Supreme Court took attempted burglary as an example and pointed out that judges could disagree about whether the "ordinary case" involves a violent confrontation or no confrontation at all. *Id.* at 2558. Ultimately, "[t]he residual clause offers no reliable way to choose between these competing accounts of what 'ordinary' attempted burglary involves." *Id.*

Second, the U.S. Supreme Court stated that "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* Specifically, the U.S. Supreme Court focused on the residual clause's "imprecise 'serious potential risk' standard." *Id.* Even if that standard could be reliably applied to "real-world facts," the task becomes significantly more indeterminate when applied to "a judge-imagined abstraction." *Id.* Adding to the confusion, the residual clause lists four crimes (burglary, arson, extortion, and crimes involving the use of explosives) with no clear connection "in respect to the degree of risk each poses." *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). The U.S. Supreme Court did not cast doubt on statutes that use expansive standards like "serious potential risk." *Id.* at 2561. Instead, the U.S. Supreme Court focused on the unique difficulties attendant to applying "the 'serious potential risk' standard to an idealized ordinary case of the crime." *Id.* Such an "abstract inquiry offers significantly less predictability" than one that applies a standard to actual, rather than imagined, facts. *Id.*

In sum, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558. The U.S. Supreme Court added that this conclusion was reinforced by

used for the elements clause because in the context of the residual clause, courts examine the ordinary case, rather than the elements of a given crime. *See Dimaya*, 138 S. Ct. at 1211.

11

courts' persistent failure to establish a workable, predictable standard. *Id.* at 2558–60; *see also id.* at 2560 ("Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise."). In conclusion, the U.S. Supreme Court explained that "[e]ach of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'" *Id.* (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948)). Thus, the U.S. Supreme Court held that the residual clause in § 924(e)(2)(B)(ii) "does not comport with the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2560.

In a final section of the opinion, the U.S. Supreme Court declined the dissent's invitation to rescue the residual clause from vagueness by "jettison[ing] . . . the categorical approach." *Id.* at 2562. The U.S. Supreme Court first noted that the government had not requested "abandon[ing] the categorical approach in residual-clause cases." *Id.* Regardless, the U.S. Supreme Court articulated that it had previously adopted the categorical approach for "good reasons." *Id.* In particular, the text of § 924(e)(2)(B)(ii) provided an indication that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* (quoting *Taylor*, 495 U.S. at 600). Additionally, there was "the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction." *Id.* Therefore, "'[t]he only plausible interpretation' of the law . . . requires use of the categorical approach." *Id.* (quoting *Taylor*, 495 U.S. at 602). Accordingly, the U.S. Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 2563.

### 2. *Dimaya*—§ 16(b)

In *Dimaya*, the U.S. Supreme Court confronted a similar vagueness issue in the context of immigration. 138 S. Ct. at 1210. Specifically, the U.S. Supreme Court was asked to determine whether 18 U.S.C. § 16(b), which is included on a list of aggravated felonies that can result in an

12

United States District Court
Northern District of California

alien's removal, is unconstitutional under the reasoning of *Johnson*. *Dimaya*, 138 S. Ct. at 1210–12. Like § 924(e)(2)(B)(ii), § 16(b) is a definitional provision. Section 16(b) defines "crime of violence" in terms close to those in the Armed Career Criminal Act's residual clause: "The term 'crime of violence' means any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The government argued that § 16(b) is "materially clearer" than the residual clause counterpart in § 924(e)(2)(B)(ii) that was invalidated by the U.S. Supreme Court in *Johnson*. *Dimaya*, 138 S. Ct. at 1213. The U.S. Supreme Court disagreed. *Id.*

The U.S. Supreme Court described *Johnson* as "a straightforward decision, with equally straightforward application" to § 16(b). *Dimaya*, 138 S. Ct. at 1213. In particular, the U.S. Supreme Court reasoned that § 16(b) contains the same two features that, in combination, rendered § 924(e)(2)(B)(ii)'s residual clause unconstitutionally vague. *Dimaya*, 138 S. Ct. at 1216. First, like the residual clause in § 924(e)(2)(B)(ii), § 16(b) has been construed to require application of the categorical approach. *Dimaya*, 138 S. Ct. at 1215. The U.S. Supreme Court explained that because "§ 16(b) also calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and "[n]othing in § 16(b) helps courts to perform that task, just as nothing in [§ 924(e)(2)(B)(ii) ] did," the analysis from *Johnson* applies with full force. *Id.* "Once again, the questions [raised in *Johnson*] have no good answers; the 'ordinary case' remains, as *Johnson* described it, an excessively 'speculative,' essentially inscrutable thing." *Id.* (quoting *Johnson*, 135 S. Ct. at 2558).

Additionally, "§ 16(b) also possesses the second fatal feature of [§ 924(e)(2)(B)(ii)]'s residual clause: uncertainty about the level of risk that makes a crime 'violent.'" *Id.* The U.S. Supreme Court saw no difference between the threshold in § 924(e)(2)(B)(ii) ("serious potential risk") and the threshold in § 16(b) ("substantial risk"). *Dimaya*, 138 S. Ct. at 1215. In fact, "*Johnson* as much as equated the two phrases." *Id.* The U.S. Supreme Court made clear that

13

"such a non-numeric standard is [not] alone problematic" because courts frequently apply hazy standards to real-world conduct. *Id.* Rather, "[t]he difficulty comes, in § 16's residual clause just as in [§ 924(e)(2)(B)(ii)]'s, from applying such a standard to 'a judge-imagined abstraction'—i.e., 'an idealized ordinary case of the crime.'" *Id.* at 1215–16. In combination with the categorical approach, "the ['substantial risk'] standard ceases to work in a way consistent with due process." *Id.* at 1216.

The U.S. Supreme Court was not persuaded by any of the government's identified "textual discrepancies" between § 16(b) and § 924(e)(2)(B)(ii). *Dimaya*, 138 S. Ct. at 1218. For example, unlike § 924(e)(2)(B)(ii), § 16(b) includes a requirement that the risk arise from acts taken "in the course of committing the offense." However, the U.S. Supreme Court explained that the temporal limitation "does little to narrow or focus the statutory inquiry" because "[i]n the ordinary case, the riskiness of a crime arises from events occurring during its commission, not events occurring later." *Dimaya*, 138 S. Ct. at 1219. Likewise, while § 924(e)(2)(B)(ii) recites a risk of "physical injury" and § 16(b) recites a risk of "physical force," "evaluating the risk of 'physical force' itself entails considering the risk of 'physical injury.'" *Dimaya*, 138 S. Ct. at 1220–21. Finally, the absence of enumerated crimes in § 16(b) did not matter because *Johnson*'s analysis "demonstrates that the list of crimes was not the culprit." *Dimaya*, 138 S. Ct. at 1221. In the end, none of the textual differences related "to the pair of features—the ordinary-case inquiry and a hazy risk threshold—that *Johnson* found to produce impermissible vagueness" or otherwise affected "the determinacy of the statutory inquiry." *Id.* at 1218.

In a portion of the opinion joined by only four Justices, the plurality addressed the issue of retaining the categorical approach for § 16(b). *See Dimaya*, 138 S. Ct. at 1216–18 (plurality opinion). The plurality detailed a number of reasons why that approach was appropriate. First, as in *Johnson*, the government conceded that the appropriate construction of the statute required applying the categorical approach. *Id.* at 1217. Second, the plurality concluded that abandoning the categorical approach would raise Sixth Amendment concerns about judges making findings of

14

fact that properly belong to juries. Third, the plurality reasoned that § 16(b)'s text "demands a categorical approach." *Id.* In particular, the plurality noted that the inquiry under § 16(b) calls on a court to examine an "offense" that "by its nature" involves a requisite risk of force. *Id.* As the plurality explained, "[t]he upshot of all th[e] textual evidence is that § 16's residual clause—like [§ 924(e)(2)(B)(ii)]'s, except still more plainly—has no 'plausible' fact-based reading." *Id.* at 1218. Finally, "the 'utter impracticability'—and associated inequities—of such [a non-categorical] interpretation is as great" as in *Johnson*. *Id.* Therefore, the plurality concluded, there is "no ground for discovering a novel interpretation of § 16(b) that would remove us from the dictates of *Johnson*." *Id.*

Justice Gorsuch concurred in part and concurred in the judgment. *Id.* at 1234 (Gorsuch, J., concurring in part and concurring in the judgment). As to the question about the categorical approach, he leaned more heavily on the government's concession that the statute compels a categorical approach. *See id.* at 1232 (noting that "no party before us has argued for a different way to read these statutes in combination," "our precedent seemingly requires this approach," and "the government itself has conceded (repeatedly) that the law compels it"). Nevertheless, he did note some force in the textual arguments supporting an approach that asks whether the crime of conviction ordinarily or always carries a risk of physical force. *Id.* at 1233. He emphasized the phrase "by its nature" and stated that "[p]lausibly, anyway, the word 'nature' might refer to an inevitable characteristic of the offense; one that would present itself automatically, whenever the statute is violated." *Id.* (citing 10 Oxford English Dictionary 247 (2d ed. 1989)). Ultimately, though, Justice Gorsuch would await another case to address these interpretative issues. *Id.* Still, he joined the majority in concluding that § 16(b) is "so vague that reasonable people cannot understand its terms and judges do not know where to begin in applying it." *Dimaya*, 138 S. Ct. at 1233 (Gorsuch, J., concurring in part and concurring in the judgment).

### 3. Application of *Johnson* and *Dimaya* to the Instant Case—§ 924(c)(3)(B)

With the principles of *Johnson* and *Dimaya* in mind, this Court now turns to Defendant's

15

contention that § 924(c)(3)(B) is unconstitutionally vague. Defendant argues that *Johnson* and *Dimaya* are dispositive as to the question whether § 924(c)(3)(B) is void for vagueness. *See* Suppl. at 2–4. The government disagrees and asserts that the provision at issue here is distinguishable from the provisions at issue in *Johnson* and *Dimaya*. Suppl. Opp. at 3–9. The bulk of the government's argument is foreclosed by Ninth Circuit precedent.

This Court begins with a few observations about the scope of the constitutional challenge in the instant case. Crucially, the language of § 16(b) at issue in *Dimaya* is virtually identical to the language of § 924(c)(3)(B) at issue here. Specifically, § 16(b) provides:

> The term "crime of violence" means any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(c)(3)(B) provides in relevant part:

> [T]he term "crime of violence" means an offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The sole distinguishing features between these two provisions are: (1) that § 16(b) refers to "any other offense" while § 924(c)(3)(B) refers to "an offense," and (2) that § 16(b) includes an extra comma before the phrase "by its nature." The government does not argue that those minor differences have any bearing on the vagueness analysis. Indeed, the Ninth Circuit has recognized that "because the wording of [§ 16 and § 924(c)(3)] is virtually identical, [courts] interpret their plain language in the same manner." *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016) (footnote omitted); *see also Park v. I.N.S.*, 252 F.3d 1018, 1022 (9th Cir. 2001) (importing a holding regarding § 924(c)(3)(B) into the context of § 16(b) based on "the identical definitions in the two statutory schemes"), *overruled on other grounds by Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006). Other circuits have similarly treated case law regarding either § 16(b) or § 924(c)(3)(B) as guiding analysis of the other. *United States v. Salas*, 889 F.3d 681, 685 (10th Cir. 2018); *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016).

United States District Court
Northern District of California

Unable to rely on any variance in wording, the government instead focuses on one of the two premises underlying the *Johnson* and *Dimaya* decisions. As the U.S. Supreme Court in *Dimaya* recognized, the provisions at issue in that case and in *Johnson* had two features that, in combination, render the provisions unconstitutionally vague: (1) both mandate a categorical approach under which courts must disregard real-world conduct in favor of attempting to identify the "ordinary case," and (2) both do not sufficiently define the requisite threshold level of risk. *Id.* at 1216. The U.S. Supreme Court emphasized that the level-of-risk issue would not be "alone problematic," but instead that the constitutional problem resulted from "layering such a[n] [imprecise] standard on top of the requisite 'ordinary case' inquiry." *Id.* at 1214–15. Drawing on this distinction, the government argues that § 924(c)(3)(B) is not constitutionally infirm because that statutory subsection does not require application of the categorical approach. Suppl. Opp. at 3–9. The government is incorrect.

As a preliminary matter, it is important to recognize that the government seeks to treat as different two statutory provisions—§ 16(b) and § 924(c)(3)(B)—that are materially indistinguishable in text. Courts typically reject such efforts because "the same words or phrases are presumed to have the same meaning when used in different parts of a statute." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1061 (9th Cir. 2008) (quoting *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 704 n.11 (9th Cir. 1981)). To be sure, both the plurality and the concurrence in *Dimaya* relied on the government's concession that the categorical approach applies to § 16(b). *See Dimaya*, 138 S. Ct. at 1217 (plurality opinion); *id.* at 1232–33 (Gorsuch, J., concurring in part and concurring in the judgment). However, the government made the same concession earlier in this case. Specifically, in its opposition to Defendant's § 2255 motion, the government admitted that § 924(c)(3)(B)'s language "triggers application of the categorical approach, which looks at offense elements." Opp. at 16. As a general matter, the law disfavors parties taking contrary positions at different points in the litigation. *See* 18B Charles Alan Wright et al., Federal Practice and Procedure § 4477 ("Absent any good explanation, a party should not be allowed to gain an

17

advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

In any event, the government's argument is foreclosed by Ninth Circuit precedent. Since at least 1995, the Ninth Circuit repeatedly has made clear that the categorical approach applies to § 924(c)(3), including the residual clause in § 924(c)(3)(B). *See Benally*, 843 F.3d at 352–53 (applying the categorical approach for a conviction under § 924(c)); *Piccolo*, 441 F.3d at 1086–87 ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995) (explaining that "this circuit has adopted a categorical approach to determining which offenses are included under section 924(c) as 'crimes of violence'"). The government does not identify any subsequent developments in U.S. Supreme Court or Ninth Circuit law that call these precedents into doubt. Instead, the government simply notes its "belie[f] that the Ninth Circuit's current precedent was wrongly decided." Suppl. Opp. at 4. However, a Ninth Circuit decision remains binding authority unless its "reasoning or theory . . . is clearly irreconcilable with the reasoning or theory of intervening higher authority." *United States v. Slade*, 873 F.3d 712, 715 (9th Cir. 2017) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)).

Moreover, the Ninth Circuit's holding that the categorical approach applies to the residual clause in § 924(c)(3)(B) is firmly rooted in the statutory text and case law. Section 924(c)(3)(B) defines "crime of violence" as "an offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." That definition begins by referring to an "offense that is a felony." As the U.S. Supreme Court has stated, statutory references to a "felony" or "offense" are "read naturally" to "refer to a generic crime as *generally* committed." *Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009); *see also Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004) (noting that § 16 "directs our focus to the 'offense' of conviction . . . rather than to the particular facts"). In other words,

18

such statutory references often call for an application of the categorical approach. *See Nijhawan*, 557 U.S. at 34. Although the same words may "sometimes refer to the specific acts in which an offender engaged on a specific occasion," *id.* at 33–34, the statute usually contains some affirmative indication that Congress intended courts to examine the defendant's actual conduct. *See Descamps*, 570 U.S. at 267–68 ("If Congress had wanted to increase a sentence based on the facts of a prior offense, it presumably would have said so; other statutes, in other contexts, speak in just that way."). For example, in *United States v. Hayes*, the U.S. Supreme Court concluded that a categorical approach was inappropriate for a statute referring to prior offenses "committed by" specified persons. 555 U.S. 415, 421 (2009). Likewise, in *Nijhawa*n, the U.S. Supreme Court adopted a non-categorical approach for a statute describing an offense "in which the loss to the victim or victims exceeds $10,000." 557 U.S. at 34, 36. In contrast, § 924(c)(3)(B) contains no similar allusions to individualized facts about the circumstances or commission of a crime.

The government's argument immediately skips from § 924(c)(3)(B)'s opening language ("offense that is a felony") to the closing language and reads the last three words ("committing the offense") out of context to argue for a contrary result. Suppl. Opp. at 4–5. The problem for the government is that the relevant phrase—"committing the offense"—does not instruct courts to apply a fact-based approach but is instead linked to a court's evaluation of substantial risk. In the statute's words, the court's task is to determine whether the offense poses "a substantial risk that physical force . . . may be used in the course of *committing the offense*." 18 U.S.C. § 924(c)(3)(B) (emphasis added). In this way, the phrase "committing the offense," which appears as part of the larger phrase "in the course of committing the offense," operates as a temporal limit on a court's assessment of risk. *See Dimaya*, 138 S. Ct. at 1219 ("All that the phrase excludes is a court's ability to consider the risk that force will be used after the crime has entirely concluded . . . ."). This Court fails to see how that phrase, which serves only to restrict the temporal scope of a court's consideration of the requisite level of risk, informs the question whether the statute is subject to the categorical approach.

19

More fundamentally, § 924(c)(3)(B)'s use of "by its nature" creates a clear directive that the categorical approach is proper. Turning back to the statutory language, § 924(c)(3)(B) tells courts to consider whether "an offense . . . *by its nature*, involves" the requisite risk of force. The phrase "by its nature" modifies the word "offense." In *Dimaya*, a plurality of the U.S. Supreme Court explained that the phrase "by its nature" in § 16(b) makes clear that the statute "tells courts to figure out what an offense normally—or . . . 'ordinarily'—entails, not what happened to occur on one occasion." *Dimaya*, 138 S. Ct. at 1217–18 (plurality opinion); *see also United States v. David H.*, 29 F.3d 489, 494 (9th Cir. 1994) ("[T]he 'by its nature' language . . . 'implies that the generic, rather than the particular, nature of the predicate offense is determinative in defining a crime of violence.'" (citation omitted)). In his concurrence in *Dimaya*, Justice Gorsuch envisions an interpretative option that goes even farther than the "ordinary case" approach and asks "whether the defendant's crime of conviction *always* [involves a risk of physical force]." 138 S. Ct. at 1233 (Gorsuch, J., concurring in part and concurring in the judgment). Although the definition of "by its nature" could support Justice Gorsuch's interpretation, this Court need not reach this question because neither party makes this argument.

The U.S. Supreme Court's analysis is supported by common usage and legal parlance, which define an offense's "nature" by its "normal and characteristic quality." Webster's Third New International Dictionary 1507 (2002); *see also* Black's Law Dictionary 1127 (9th ed. 2009) (defining "nature" as "[a] fundamental quality that distinguishes one thing from another; the essence of something"). This focus on ordinary or usual qualities demands the categorical approach. That command becomes even stronger in light of the fact that the statute does not merely reference the offense's "nature," but instead focuses on whether the offense "by its nature" has a particular quality. The phase "by its nature" is regularly understood to mean that "things of that type always have that characteristic." *By its nature*, Collins English Dictionary, https://www.collinsdictionary.com/us/dictionary/english/by-its-nature (last visited August 20, 2018). Again, this attention on definitional characterizations calls for application of the categorical

20

United States District Court
Northern District of California

More fundamentally, § 924(c)(3)(B)'s use of "by its nature" creates a clear directive that the categorical approach is proper. Turning back to the statutory language, § 924(c)(3)(B) tells courts to consider whether "an offense . . . *by its nature*, involves" the requisite risk of force. The phrase "by its nature" modifies the word "offense." In *Dimaya*, a plurality of the U.S. Supreme Court explained that the phrase "by its nature" in § 16(b) makes clear that the statute "tells courts to figure out what an offense normally—or . . . 'ordinarily'—entails, not what happened to occur on one occasion." *Dimaya*, 138 S. Ct. at 1217–18 (plurality opinion); *see also United States v. David H.*, 29 F.3d 489, 494 (9th Cir. 1994) ("[T]he 'by its nature' language . . . 'implies that the generic, rather than the particular, nature of the predicate offense is determinative in defining a crime of violence.'" (citation omitted)). In his concurrence in *Dimaya*, Justice Gorsuch envisions an interpretative option that goes even farther than the "ordinary case" approach and asks "whether the defendant's crime of conviction *always* [involves a risk of physical force]." 138 S. Ct. at 1233 (Gorsuch, J., concurring in part and concurring in the judgment). Although the definition of "by its nature" could support Justice Gorsuch's interpretation, this Court need not reach this question because neither party makes this argument.

The U.S. Supreme Court's analysis is supported by common usage and legal parlance, which define an offense's "nature" by its "normal and characteristic quality." Webster's Third New International Dictionary 1507 (2002); *see also* Black's Law Dictionary 1127 (9th ed. 2009) (defining "nature" as "[a] fundamental quality that distinguishes one thing from another; the essence of something"). This focus on ordinary or usual qualities demands the categorical approach. That command becomes even stronger in light of the fact that the statute does not merely reference the offense's "nature," but instead focuses on whether the offense "by its nature" has a particular quality. The phase "by its nature" is regularly understood to mean that "things of that type always have that characteristic." *By its nature*, Collins English Dictionary, https://www.collinsdictionary.com/us/dictionary/english/by-its-nature (last visited August 20, 2018). Again, this attention on definitional characterizations calls for application of the categorical

20

Case No. 98-CR-20060-LHK-6
Case No. 16-CV-03542-LHK
ORDER GRANTING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

approach.

The government attempts to show that the word "nature" is sometimes used to denote a fact-based inquiry. For example, the government points to 18 U.S.C. § 3553(a)(1), in which (the government says) "Congress has . . . instructed sentencing courts to consider 'the nature and circumstances of the offense'—naturally understood as the defendant's own conduct—in determining the appropriate sentence in a federal criminal case." Suppl. Opp. at 5. This Court questions whether the word "nature" in § 3553(a)(1) actually does the work that the government suggests; one plausible interpretation is that "nature . . . of the offense" refers to inherent characteristics while "circumstances of the offense" refers to the defendant's particular situation. In any event, even if the government is correct that "nature" can sometimes bear a circumstance-specific meaning, it cannot do so in the context of § 924(c)(3)(B) for multiple reasons. First, under the government's interpretation of "nature," the phrase "by its nature" appears to play no role in the statute. That is, Congress could have achieved the same result by writing a statute covering any "offense . . . that involves a substantial risk." As the Ninth Circuit has observed, "had Congress intended a case-by-case inquiry into whether the felony as committed constituted a crime of violence, there would have been no need for the phrase 'by its nature.'" *David H.*, 29 F.3d at 494 (alteration and citation omitted). Courts generally avoid interpretations that render statutory language meaningless. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011).

Second, and relatedly, the government's interpretation of "nature" fails to take into account the entirety of the phrase "by its nature." As noted above, that phrase implicates inherent qualities or characteristics. The government nowhere offers a competing interpretation or otherwise explains why that accepted meaning does not apply in this context. Tellingly, neither 18 U.S.C. § 3553(a)(1) nor any of the other examples cited in the government's opposition use the phrase "by its nature." *See* Suppl. Opp. at 5. Even more telling, in the instant case, the government itself recognized the intuitive force behind the notion that the phrase "by its nature" triggers the

21

categorical approach. Pre-*Dimaya*, the government wrote that "[t]he phrase 'by its nature' in Section 924(c)(3)(B) simply triggers application of the categorical approach, which looks at offense elements." Opp. at 16. Post-*Dimaya*, the government has changed its position. However, this Court agrees with the government's earlier logic—namely, that § 924(c)(3)(B)'s use of "by its nature" plainly invokes the categorical approach.

The government's argument regarding § 924(c)(3)(B)'s use of the word "involves" is equally unavailing. The government cites to provisions reciting the term "involving" that were adopted as part of the Comprehensive Crime Control Act of 1984, a bill in which § 924(c) was amended. *See, e.g.*, Pub. L. No. 98-473, § 4243(d), 98 Stat. 1837, 2059 (1984) ("an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage"); *id.* § 502, 98 Stat. 2068 (drug offenses "involving" specific quantities and types of drugs); *id.* § 1952B, 98 Stat. 2137 ("crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury"). The government argues that because all of these provisions require courts to consider a defendant's underlying conduct, § 924(c)(3)(B) should be construed in the same manner. Suppl. Opp. at 5. The government's argument on this score merely compounds the above-identified errors. In particular, none of the provisions that the government mentions use the phrase "by its nature." That absence underscores why it is proper to treat § 924(c)(3)(B) differently than the government's identified provisions. Importantly, the government does not contend that § 924(c)(3)(B)'s use of the word "involves" precludes applying the categorical approach. Nor could the government make that argument, given that the now-void residual clause contained in § 924(e)(2)(B)(ii) identically uses the word "involves" and also has been held to require the categorical approach. *See Johnson*, 135 S. Ct. at 2562 (noting that the categorical approach was "adopted in [the U.S. Supreme Court's decision in] *Taylor*" and "reaffirmed in each of [the U.S. Supreme Court's] four residual-clause cases").[5]

---

[5] The government incorrectly suggests that the U.S. Supreme Court's decision in *Taylor* "relied on

1    Faced with the multiple clear commands in § 924(c)(3)(B)'s text for the categorical

2  approach, the government turns to contextual considerations.  The government first looks to §

3  924(c)(3)(B)'s neighboring provision, § 924(c)(3)(A).  As discussed above, § 924(c)(3)(A) defines

4  "crime of violence" as "an offense that . . . has as an element the use, attempted use, or threatened

5  use of physical force against the person or property of another."  The government suggests that a

6  comparison of § 924(c)(3)(A) and § 924(c)(3)(B) raises two issues, but neither is persuasive.

7    First, the government contrasts § 924(c)(3)(A)'s explicit reference to "elements" with §

8  924(c)(3)(B)'s omission of a comparable word.  Suppl. Opp. at 6.  The government suggests that

9  this distinction makes § 924(c)(3)(A) a better candidate for the categorical approach.  Suppl. Opp.

10  at 9.  However, the government fails to acknowledge that the form of the categorical approach

11  under § 924(c)(3)(A) is different than the form under § 924(c)(3)(B), as the former focuses on

12  elements while the latter focuses on the ordinary case.  *Dimaya*, 138 S. Ct. at 1211 n.1.  Moreover,

13  this Court has already laid out the various reasons requiring adoption of the categorical approach

14  for the residual clause in § 924(c)(3)(B).  That § 924(c)(3)(A) and § 924(c)(3)(B) employ differing

15  language to mandate similar categorical approaches is not problematic.  *See Kirtsaeng v. John*

16  *Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013) ("We are not aware, however, of any canon of

17  interpretation that forbids interpreting different words used in different parts of the same statute to

18  mean roughly the same thing.").

19    Second, the government implies that if § 924(c)(3)(A) and § 924(c)(3)(B) both require a

20  categorical approach, then § 924(c)(3)(B) would be wholly redundant of § 924(c)(3)(A).  Suppl.

21  Opp. at 6.  This Court disagrees.  It is true that, where possible, courts should not read statutes "so

22  as to render superfluous other provisions in the same enactment."  *Freytag v. C.I.R.*, 501 U.S. 868,

23

---

24  the absence of the word 'involves' as indicating that a categorical approach is required."  Suppl.
   Opp. at 5.  That is not what the U.S. Supreme Court did in *Taylor*.  Instead, the U.S. Supreme
25  Court contrasted statutory language that asks whether a crime has as an element the use of force
   with hypothetical language that asks whether a crime, "*in a particular case*, involves" the use of
26  force.  *Taylor*, 495 U.S. at 600 (emphasis added).  The U.S. Supreme Court nowhere suggested
   that the word "involves" necessarily specifies that a categorical approach is appropriate.

23

27

28  Case No. 98-CR-20060-LHK-6
   Case No. 16-CV-03542-LHK
   ORDER GRANTING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28
   U.S.C. § 2255

877 (1991) (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990)). However, the U.S. Supreme Court has recognized that "[s]ome overlap in criminal provisions is, of course, inevitable." *Marinello v. United States*, 138 S. Ct. 1101, 1107 (2018). Here, there is no doubt that some offenses would qualify as "crimes of violence" under both the elements clause, § 924(c)(3)(A), and the residual clause, § 924(c)(3)(B). Nevertheless, each of these two statutory provisions covers conduct that the other does not. This is because (1) the forms of the categorical approach applicable to these provisions are different; and (2) the provisions contain distinct substantive standards. As a result, the Court concludes that there is no redundancy in adopting the categorical approach for the residual clause in § 924(c)(3)(B).

The government next draws on a higher-level distinction between § 924(c)(3)(B), the provision at issue here, and § 924(e)(2)(B)(ii) and § 16(b), the provisions at issue in *Johnson* and *Dimaya*, respectively. The government notes that unlike § 924(e)(2)(B)(ii) and § 16(b), which "require the classification of prior convictions," § 924(c)(3)(B) "applies only to conduct giving rise to the current prosecution." Suppl. Opp. at 7. In the government's view, this distinction significantly weakens the case for applying the categorical approach in the context of § 924(c)(3)(B). Suppl. Opp. at 7–8. The government's argument, though, is expressly foreclosed by Ninth Circuit precedent. In *Piccolo*, the Ninth Circuit unequivocally stated that "in the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime." 441 F.3d at 1086–87. Declining to distinguish between current and prior crimes advances the "general commitment to deciding rules of law on categorical grounds." *Id.* at 1087. It is also reflective of the fact that the statutory text provides no basis for drawing such a line between current and prior crimes. *See id.*; *see also United States v. Johnson*, 953 F.2d 110, 114 (4th Cir. 1991) (explaining that the "distinction between prior offenses and the instant offense" is "unsupported by the language of the [provision]"). In the instant case, the government does not attempt to ground its rejection of the categorical approach for § 924(c)(3)(B) but not for § 924(e)(2)(B)(ii) and § 16(b) in any textual difference between the

24

three statutes.

The government rightly notes that some of the principles animating adoption of the categorical approach are inapplicable or less forceful when examining current offenses. Suppl. Opp. at 8–9. In *Taylor*, the U.S. Supreme Court offered two additional grounds beyond the general support in the textual language that tipped the scales in favor of the categorical approach: (1) the categorical approach avoids Sixth Amendment concerns that would arise from courts making findings of fact that enhance sentences, and (2) the categorical approach averts "the practical difficulties and potential unfairness of a factual approach." 495 U.S. at 601–02; *see also Descamps*, 570 U.S. at 267 (listing the justifications in *Taylor*). The Third Circuit has stated that these two rationales are not implicated "[w]hen the predicate offense . . . and the § 924(c) offense are contemporaneous and tried to the same jury" because the court may "determine the basis for a defendant's predicate conviction" without "finding any new facts which are not of record in the case before it." *United States v. Robinson*, 844 F.3d 137, 141, 143 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 215 (2017). The Third Circuit's statements do not change the analysis here. Notably, the Third Circuit case dealt with the elements clause and did not address the residual clause. *Id.* at 141 ("[W]e will not address Robinson's challenge to the residual clause."). Moreover, the Ninth Circuit has recognized that the absence of the workability issues identified in *Taylor* does not preclude adoption of the categorical approach. *Piccolo*, 441 F.3d at 1087; *Amparo*, 68 F.3d at 1225. At bottom, policy considerations (or lack thereof) cannot overcome § 924(c)(3)(B)'s textual instruction to use the categorical approach.

The government also urges this Court to apply the canon of constitutional avoidance. Suppl. Opp. at 9. That canon provides that "when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is [a court's] plain duty to adopt that construction which will save the statute from constitutional infirmity." *United States ex rel. Attorney Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 407 (1909); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001)

25

United States District Court
Northern District of California

(espousing a court's obligation to adopt a reasonable alternative interpretation "if an otherwise acceptable construction of a statute would raise serious constitutional problems"). In the instant case, this Court has no occasion to apply the constitutional avoidance canon because the statutory text is not "susceptible of more than one construction." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). For the reasons previously discussed, the text of § 924(c)(3)(B) requires a categorical approach, not a fact-based approach. A plurality of the U.S. Supreme Court has already concluded that § 16(b)'s nearly identical residual clause "has no 'plausible' fact-based reading." *Dimaya*, 138 S. Ct. at 1218 (plurality opinion). The same holds true here. "In the absence of more than one plausible construction, the canon [of constitutional avoidance] simply 'has no application.'" *Jennings*, 138 S. Ct. at 842 (quoting *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014)). Therefore, this Court rejects the government's constitutional avoidance argument.

Once it is accepted that the categorical approach applies, the residual clause in § 924(c)(3)(B) must be deemed unconstitutionally vague. Section 924(c)(3)(B) suffers from the same two features that rendered the provisions at issue in *Johnson* and *Dimaya* unconstitutionally vague. First, § 924(c)(3)(B) creates "'grave uncertainty about how to estimate the risk posed by a crime' because it 'tie[s] the judicial assessment of risk' to a hypothesis about the crime's 'ordinary case.'" *Dimaya*, 138 S. Ct. at 1213 (quoting *Johnson*, 135 S. Ct. at 2557). Second, § 924(c)(3)(B) "le[aves] unclear what threshold level of risk [makes] any given crime" a crime of violence. *Dimaya*, 138 S. Ct. at 1214 (citing *Johnson*, 135 S. Ct. at 2558). "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a" crime of violence, the residual clause in § 924(c)(3)(B) violates the guarantee of due process. *Johnson*, 135 S. Ct. at 2558; *see also Dimaya*, 138 S. Ct. at 1223 ("Because the clause had both an ordinary-case requirement and an ill-defined risk threshold, it necessarily 'devolv[ed] into guesswork and intuition,' invited arbitrary enforcement, and failed to provide fair notice." (quoting *Johnson*, 135 S. Ct. at 2559)).

United States District Court
Northern District of California

Only one circuit—the Tenth Circuit—has addressed the constitutionality of the residual clause in § 924(c)(3)(B) since the issuance of *Dimaya*. In that case, the Tenth Circuit concluded that § 924(c)(3)(B) "is likewise unconstitutionally vague." *United States v. Salas*, 889 F.3d 681, 686 (10th Cir. 2018). The Tenth Circuit explained that whether a crime constitutes a "crime of violence" under § 924(c)(3)(B) is a legal question subject to the categorical approach. *Salas*, 889 F.3d at 686. Thus, the Tenth Circuit reasoned that "§ 924(c)(3)(B) possesses the same features as [§ 924(e)(2)(B)(ii)'s] residual clause and § 16(b) that combine to produce 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" *Id.* (quoting *Dimaya*, 138 S. Ct. at 1223 (quoting *Johnson*, 135 S. Ct. at 2558)). Accordingly, "*Dimaya*'s reasoning for invalidating § 16(b) applies equally to § 924(c)(3)(B)." *Id.*

Another circuit—the Seventh Circuit—reached the same result before *Dimaya*. In *United States v. Cardena*, the Seventh Circuit confronted the issue whether the residual clause in § 924(c)(3)(B) is unconstitutionally vague. 842 F.3d 959, 995–96 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 247 (2017). In an earlier case, the Seventh Circuit had ruled that § 16(b) is unconstitutionally vague under *Johnson*. *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015). In light of that holding, the Seventh Circuit easily concluded that § 924(c)(3)(B) is also unconstitutionally vague. *Cardena*, 842 F.3d at 996. As the Seventh Circuit put it, because "[t]he clause invalidated in *Vivas–Ceja* [§ 16(b)] is the same residual clause contained in the provision at issue, 18 U.S.C. § 924(c)(3)(B)," "the residual clause in 18 U.S.C. § 924(c)(3)(B) is also unconstitutionally vague." *Id.* That holding remains intact after *Dimaya*.

Multiple other circuits had upheld § 924(c)(3)(B)'s constitutionality before *Dimaya*. *See United States v. Garcia*, 857 F.3d 708, 711 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 641 (2018); *United States v. Eshetu*, 863 F.3d 946, 955 (D.C. Cir. 2017); *Ovalles v. United States*, 861 F.3d 1257, 1265 (11th Cir. 2017), *reh'g en banc granted, opinion vacated*, 889 F.3d 1259 (11th Cir. 2018); *United States v. Prickett*, 839 F.3d 697, 699 (8th Cir. 2016), *cert. denied*, 138 S. Ct. 1976 (2018); *United States v. Hill*, 832 F.3d 135, 150 (2d Cir. 2016), *amended and superseded by*

United States District Court
Northern District of California

*United States v. Hill*, 890 F.3d 51 (2d Cir. 2018); *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 1975 (2018). However, none of those circuits was faced with binding authority holding § 16(b) unconstitutional (and many had found § 16(b) constitutional). For the most part, the decisions relied on distinctions between § 924(e)(2)(B)(ii) and § 16(b) that were rejected in *Dimaya*. Thus, their reasoning likely does not remain valid in the wake of *Dimaya*.

The one circuit that has disagreed is the Sixth Circuit. Before the U.S. Supreme Court's decision in *Dimaya*, the Sixth Circuit concluded in *Taylor* that § 924(c)(3)(B) is constitutional. 814 F.3d at 375–76. However, most of the analysis in *Taylor* raises the same textual distinctions that were later rejected by the U.S. Supreme Court in *Dimaya*. *See id.* at 376–78.

Further, after deciding *Taylor*, but before the U.S. Supreme Court's *Dimaya* decision, the Sixth Circuit held in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), that § 16(b) is unconstitutionally vague despite having identical language to § 924(c)(3)(B). *Id.* at 446. The *Shuti* panel's central justification for these seemingly inconsistent positions was that unlike § 924(e)(2)(B)(ii) and § 16(b), "which require a categorical approach to stale predicate convictions," § 924(c) "is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding." *Shuti*, 828 F.3d at 449. It is unclear whether the Sixth Circuit's earlier decision in *Taylor* actually placed any weight on the distinction between current and prior offenses. In any event, this Court finds the distinction between current and prior offenses unavailing because the Sixth Circuit has recognized that § 924(c)(3)(B), and particularly its use of the phrase "by its nature," compels a categorical approach. *Taylor*, 814 F.3d at 377 ("The phrase 'by its nature' indicates that a court's analysis of whether there is a risk of force is confined to the offense itself."). This Court agrees with the Tenth Circuit that the Sixth Circuit's ground for distinguishing § 16(b) and § 924(c) "is a distinction without a difference . . . and is incorrect to the extent it suggests that whether an offense is a crime of violence depends on the defendant's specific conduct." *See Salas*, 889 F.3d at 686. That conclusion is especially powerful

28

when read in light of § 924(c)(3)(B)'s textual commitment to applying the categorical approach.

The majority of district courts in this circuit have held that § 924(c)(3)(B) is unconstitutionally vague, both before and after the U.S. Supreme Court's decision in *Dimaya*. *See, e.g.*, *United States v. Sangalang*, 2018 WL 2670412, at *4 (D. Nev. June 4, 2018); *United States v. Bell*, 158 F. Supp. 3d 906, 921 (N.D. Cal. 2016); *United States v. Baires-Reyes*, 191 F. Supp. 3d 1046, 1053 (N.D. Cal. 2016); *United States v. Lattanaphom*, 159 F. Supp. 3d 1157, 1164 (E.D. Cal. 2016); *United States v. Bustos*, 2016 WL 6821853, at *5 (E.D. Cal. Nov. 17, 2016); *United States v. Smith*, 215 F. Supp. 3d 1026, 1035 (D. Nev. 2016).

A cluster of district courts in the Southern District of California reached the opposite conclusion before the U.S. Supreme Court's decision in *Dimaya*. *See, e.g., United States v. Tavarez-Alvarez*, 2017 WL 2972460, at *4 (S.D. Cal. July 11, 2017); *United States v. Lott*, 2017 WL 553467, at *3 (S.D. Cal. Feb. 9, 2017); *Hernandez v. United States*, 2016 WL 7250676, at *3 (S.D. Cal. Nov. 8, 2016).

The picture of district courts outside this circuit before the U.S. Supreme Court's decision in *Dimaya* is slightly more varied. *Compare, e.g.*, *United States v. Herr*, 2016 WL 6090714, at *3 (D. Mass. Oct. 18, 2016) (finding § 924(c)(3)(B) unconstitutionally vague), *and United States v. Edmundson*, 153 F. Supp. 3d 857, 864 (D. Md. 2015) (same), *with United States v. Green*, 2016 WL 277982, at *5 (D. Md. Jan. 22, 2016) (finding § 924(c)(3)(B) not unconstitutionally vague), *aff'd*, 684 F. App'x 300 (4th Cir. 2017), *and United States v. Tsarnaev*, 157 F. Supp. 3d 57, 74 (D. Mass. 2016) (same).

The government cites one district court case from this district issued before the U.S. Supreme Court's *Dimaya* decision. Suppl. Opp. at 9. In that pre-*Dimaya* case, Judge Alsup concluded that § 924(c)(3)(B) is not unconstitutionally vague. *See* Order Denying Section 2255 Motion at 9, *United States v. Carcamo*, No. 08-CV-00730-WHA (N.D. Cal. July 31, 2017), ECF No. 6348. In particular, Judge Alsup relied on a distinction between § 924(c)(3)(B) and the provisions at issue in *Johnson* and *Dimaya*:

United States District Court
Northern District of California

> In *Johnson* and *Dimaya*, the statutes under review required courts to consider, in the abstract, whether crimes carried a risk of the use of physical force. In contrast, Section 924(c)(3)(B) asks courts to consider only circumstances in which the defendant possessed a firearm "during and in relation to" or "in furtherance of" a crime, and to determine whether that crime involves "a substantial risk [of] physical force." In other words, under Section 924(c)(3)(B), the definition of the crime is intertwined with the possession of a firearm, unlike the statutes at issue in *Johnson* and *Dimaya*.

*Id.* at 8. For this reason, Judge Alsup concluded that "[§ 924(c)(3)(B)] is not so vague that an ordinary citizen would have trouble understanding it, nor does it give enforcement authorities excessive discretion in how to apply the law." *Id.* at 9; *see also Ovalles*, 861 F.3d at 1265–66 ("The required 'nexus' between the § 924(c) firearm offense and the predicate crime of violence makes the crime of violence determination more precise and more predictable.").

Although Judge Alsup pinpoints a distinction between § 924(c)(3)(B) and the provisions at issue in *Johnson* and *Dimaya*, that distinction does not cure any of § 924(c)(3)(B)'s indeterminacy problems. The Tenth Circuit addressed this precise argument, explaining that "th[e] firearm requirement simply means that the statute will apply in fewer instances, not that it is any less vague." *Salas*, 889 F.3d at 685. Like the Tenth Circuit, this Court does not believe that requiring a sufficient nexus to a firearm remedies either of the two features that rendered the provisions at issue in *Johnson* and *Dimaya* unconstitutionally vague. *See id.* This Court respectfully disagrees with Judge Alsup's decision and elects to follow the many district courts in this circuit that have determined that § 924(c)(3)(B) is unconstitutionally vague under the reasoning of *Johnson* and *Dimaya*.

## C. Procedural Default

Finally, the government asserts that Defendant is procedurally barred from raising his *Johnson*-based void-for-vagueness attack on his conviction under 18 U.S.C. § 924(c) "because he failed to raise it on direct appeal." Opp. at 3–6. For the reasons explained below, the Court disagrees with the government.

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on

30

direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). However, a defendant can overcome such a procedural default if he demonstrates both "cause" for not raising the argument at trial or on direct appeal and "prejudice" from not having done so. *Id.* at 351.

The "cause" prong requires a defendant "to show that some objective factor external to the defense impeded counsel's efforts to raise the claim" on appeal. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). In *Reed v. Ross*, 468 U.S. 1 (1984), the U.S. Supreme Court described one way in which a defendant can demonstrate sufficient cause to overcome a procedural default. Specifically, in *Reed*, the U.S. Supreme Court held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim" at trial or on appeal. *Id.* at 16. Further, the *Reed* Court identified three situations in which a newly recognized constitutional rule is "so novel" that it can be considered "not reasonably available" to a defendant at the time of his trial or appeal: (1) when the U.S. Supreme Court "explicitly overrule[s] one of [its] precedents" in announcing its constitutional rule; (2) when the U.S. Supreme Court's decision "overturn[s] a longstanding and widespread practice to which [it] has not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) when the U.S. Supreme Court "disapprove[s] a practice [it] arguably has sanctioned in prior cases." *Id.* at 16–17.

In the instant case, Defendant argues that he can demonstrate cause under the second *Reed* criterion. *See* Reply at 3. The Court agrees with Defendant. In *United States v. Sorenson*, 914 F.2d 173 (9th Cir. 1990), *cert denied*, 498 U.S. 1099 (1990)—which was decided well before Defendant's sentencing and resentencing—the Ninth Circuit explicitly held that the ACCA's residual clause "is not void for vagueness," and the U.S. Supreme Court denied certiorari. *Id.* at 175. Further, as another district court in this circuit has explained, "[a]t all times from the *Sorenson* decision in 1990 to" the U.S. Supreme Court's *Johnson* decision in 2015, "the Ninth Circuit has consistently rejected vagueness claims to the residual clauses of the ACCA and the

31

Sentencing Guidelines as either meritless or foreclosed." *McFarland v. United States*, 2017 WL 810267, at \*4 (C.D. Cal. Mar. 1, 2017) (citing *United States v. Martinez*, 771 F.3d 672, 678 (9th Cir. 2014); *United States v. Spencer*, 724 F.3d 1133, 1145–46 (9th Cir. 2013), *amended by* 580 F. App'x 619 (9th Cir. 2014); and *United States v. Argo*, 925 F.2d 1133, 1134–35 (9th Cir. 1991)). Beyond that, "in the years following [Defendant's direct appeals], a 'solid wall of circuit authority' rejected void-for-vagueness challenges to the ACCA." *Id.* (citing *United States v. Martin*, 753 F.3d 485, 494 (4th Cir. 2014); *United States v. Phillips*, 752 F.3d 1047, 1051–52 (6th Cir. 2014); *United States v. Van Mead*, 773 F.3d 429, 438 n.7 (2d Cir. 2014); *United States v. Blair*, 734 F.3d 218, 223 n.5 (3d Cir. 2013); *United States v. Brown*, 734 F.3d 824, 827 (8th Cir. 2013); *United States v. Orona*, 724 F.3d 1297, 1310–11 (10th Cir. 2013); *United States v. Jones*, 689 F.3d 696, 704–05 (7th Cir. 2012); *United States v. Hart*, 674 F.3d 33, 41 n.3 (1st Cir. 2012); *United States v. Jackson*, 250 F. App'x 926, 930 (11th Cir. 2007)). Thus, Defendant would have been precluded by this "near-unanimous body of lower court authority" if he had raised a void-for-vagueness challenge to § 924(c)'s residual clause in his direct appeal. *Reed*, 468 U.S. at 17. As a result, Defendant's void-for-vagueness challenge was not "reasonably available" to him until *Johnson* was decided. *Id.* at 16. Consequently, Defendant has demonstrated cause for his failure to assert a void-for-vagueness challenge to his § 924(c) conviction in his direct appeal.

The Court also finds that Defendant has sufficiently demonstrated prejudice. To establish prejudice, a defendant must demonstrate "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In other words, a defendant must show a "reasonable probability" that, without the error, the result of his criminal proceedings would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999). In the instant case, as described in detail above, Defendant has shown that absent the unconstitutionally vague definition for "crime of violence" in § 924(c)'s residual clause, Defendant would not have been convicted under Count Three for violating § 924(c), and thus

1   would not have been sentenced to that provision's five-year mandatory minimum term of

2   imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i). Put another way, there is a "reasonable

3   probability" that Defendant's sentence would have been different if Defendant had not been

4   unconstitutionally convicted of violating § 924(c). The Court concludes that this is more than

5   sufficient to demonstrate prejudice.

6         Accordingly, the Court finds that Defendant is not procedurally barred from asserting his

7   void-for-vagueness challenge to his § 924(c) conviction under Count Three because he has

8   sufficiently established cause and prejudice to overcome his procedural default.

9   **III.    CONCLUSION**

10        For the foregoing reasons, Defendant's motion to vacate his sentence pursuant to 28 U.S.C.

11  § 2255 is GRANTED. Defendant's conviction and sentence pursuant to 18 U.S.C. § 924(c)

12  (Count Three) are VACATED. Additionally, although the government asserts that the Court

13  "should not resentence Defendant to a lesser sentence" in any event, Suppl. Opp. at 10, the Court

14  finds it appropriate to defer resolution of this issue until resentencing, at which point both parties

15  will have had an opportunity to more thoroughly address the issue. The Court further notes that a

16  new presentence investigation report may be necessary for resentencing. Thus, the parties shall

17  meet and confer and jointly file a proposed schedule for resentencing by August 28, 2018. The

18  parties shall also indicate whether they believe a new presentence investigation report will be

19  necessary for resentencing.

20  **IT IS SO ORDERED.**

21

22  Dated: August 20, 2018

23                                     *Lucy H. Koh*

24                              LUCY H. KOH
                            United States District Judge

25

26

27                                  33

28